OPINION
The State appeals from the judgment of the Montgomery County Common Pleas Court wherein the court granted David Schickling's motion to suppress. This appeal is taken pursuant to R.C. 2945.67(A) and Crim.R. 12(K).
Schickling was indicted for possession of heroin in violation of R.C.2925.11(A). He moved to suppress the heroin used to prosecute him. Officer John Beall of the Dayton Police Department was the sole witness at the suppression hearing.
Beall testified he was patroling the area of the 600 block of Brooklyn Avenue in Dayton around noon on June 14, 2001. Beall said he went to that area because he had received information the day before from a lady driving a stolen car that 612 Brooklyn was a heroin house and people were selling drugs from the back door. Beall said she told him there were two or three sellers in that house and there were handguns on the table. (T. 6 and 7).
Officer Beall also testified that he had arrested a young man that ran from 612 Brooklyn a month prior and he had five grams of heroin on him. Beall also testified that two weeks earlier a lady at 616 Brooklyn advised him that 612 Brooklyn was "very busy for drug sales" and she would appreciate if we would patrol the area more. (T. 9).
Beall testified he set up observation in an alley behind 612 Brooklyn and observed the defendant coming out the back door. Beall testified he got out of his cruiser and walked up to Schickling and asked him who lived at the house he had just exited. The defendant told Beall he didn't know who lived there. Beall testified that the defendant was wearing a long baggy tie-shirt that went over his waistband. Beall then testified as follows:
Q. Did that make you suspicious?
A. Yes.
Q. And why?
 A. Well, he can conceal any type of weapon in his waistband. And I couldn't see his waistband. So, based on his statement to me that he didn't know who lived at the house, I advised him that I was going to pat him down for weapons.
 Q. Did you ask him any questions prior to patting him down?
 A. I asked him if he had any weapons or drugs on him.
Q. What was his response?
 A. And he stated that he had some drugs on him and that they are in his right front pants pocket.
Q. Did he state what kind of drugs?
A. No.
 Q. When he stated this to you, did you pat him down next?
 A. Yeah. I patted his waistband down first. And then I felt his right front pocket and I didn't feel anything there.
 Q. Prior to patting him down, was he handcuffed or not handcuffed?
A. He was not handcuffed.
Q. So you patted his waistband down?
A. Yes.
Q. Did you find anything?
A. No.
Q. Did you pat his right front pants pocket down?
A. Yes.
Q. Did you find anything in there?
A. No.
Q. At what point did you handcuff him?
A. After that.
Q. And why did you handcuff him?
 A. Because I advised him I didn't feel anything in his right front pocket. And I asked him where the drugs were.
 And he said he threw them down. And I told him I was watching you. You didn't throw them down. Where are they?
 At that point, he started moving around quite a bit. And at that point I handcuffed him.
Q. Did he ever tell you he had a syringe on him?
A. Yes, he did.
Q. Did he tell you where it was?
A. He told me it was in his left pocket.
Q. And did you pat down his left pocket?
A. Yes.
Q. What did you find?
 A. I felt something inside there that felt like a syringe.
Q. Did you remove it?
A. Yes, I did.
Q. Was there anything else in that pocket?
A. Yes, there was.
Q. What was it?
 A. There were two gel caps, clear gel caps, I later found out to be heroin.
Q. Did you subsequently arrest this individual?
A. Yes.
Q. What was his name?
A. David Schickling.
The trial court concluded that Beall had made a valid investigatory stop, but that he did not have grounds to frisk the defendant. The court concluded that there was no evidence that Officer Beall should have reasonably believed that his safety was in jeopardy. The trial court granted the defendant's motion to suppress the drugs.
The State argues that the trial court erred in granting the defendant's suppression motion because the frisk did not occur until after the defendant admitted that he had drugs on him after leaving a house suspected of drug activity and, therefore, Officer Beall had probable cause to arrest the defendant and search him incident to the arrest. We agree with that argument. (Parenthetically, Officer Beall had reasonable grounds to "frisk" the defendant since he left a house suspected of drug activity, in which handguns were seen and because of his suspicious response).
If probable cause to arrest without a warrant exists prior to a search, it is immaterial that the search incident to arrest actually precedes the arrest. The key is the prior existence of probable cause, and that the fruit of the search not provide the justification for the arrest. State v. Jones (1998), 112 Ohio App.3d 206; State v. Rainey (July 6, 1989), Montgomery App. No. 11380, unreported.
The defendant makes an alternative argument to sustain the trial court's decision that the trial court erred in concluding that Officer Beall had reasonable suspicion to stop the defendant as he was leaving the 612 Brooklyn Avenue residence.
The State argues that Officer Beall's initial encounter with the defendant was consensual. The Supreme Court recognized in Terry that not all police-citizen encounters are seizures. Absent force or threat of force, a police officer may seek information and assistance of any citizen. Florida v. Royer (1983), 460 U.S. 491. In Royer, two police officers approached the defendant as he was walking down an airport concourse and identified themselves and asked to speak to him, and when he agreed, asked for his airline ticket and driver's license. They then asked him to accompany them to a nearby room, which he did.
The plurality appeared to view the initial encounter as no seizure.
 [2, 3] Second, law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. See Dunaway v. New York, supra, 442 U.S., at 210, n. 12, 99 S.Ct., at 2255, n. 12; Terry v. Ohio, 392 U.S., at 31, 32-33, 88 S.Ct., at 1885-1886
(Harlan, J., concurring); id., at 34, 88 S.Ct., at 1886 (WHITE, J., concurring). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. United States v. Mendenhall, 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.). The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. Terry v. Ohio, 392 U.S., at 32-33, 88 S.Ct., at 1885-1886 (Harlan, J., concurring); id. at 34, 88 S.Ct., at 1886 (WHITE, J., concurring). He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. United States v. Mendehall, supra, 446 U.S. at 556, 100 S.Ct., at 18778 (opinion of Stewart, J.). If there is no detention-no seizure within the meaning of the Fourth Amendment-then no constitutional rights have been infringed.
See also Florida v. Rodriguez (1984), 469 U.S. 1.
We believe that the initial encounter that Officer Beall had with the defendant was a consensual encounter demanding no level of suspicion. Once the defendant told Beall he did not know who lived in the house he was seen leaving, Beall had reasonable suspicion to believe that the defendant had just engaged in a drug transaction at 612 Brooklyn Avenue.
When viewing a police officer's conclusion of criminal activity, a court must view the evidence along with inferences and deductions that might well elude an untrained person. United States v. Cortez (1981),449 U.S. 411. Those facts and circumstances, along with the inferences and deductions "understood by those versed in the field of law enforcement" must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. Id. at 418. The State's assignment of error is sustained. The judgment of the trial court is Reversed and Remanded for further proceedings.
FAIN, J., and YOUNG, J., concur.